

NO. 1 4 2005

**Clerk of the Trial Court**

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| SHAWN KLEMMER and<br>STEPHANIE KLEMMER,<br><br>Plaintiffs,<br><br>vs.<br><br>PROVIDENCE HEALTH SYSTEM -<br>WASHINGTON d/b/a PROVIDENCE<br>ALASKA MEDICAL CENTER;<br>KIMBERLY-CLARK CORPORATION,<br>and MEDIVANCE, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 3AN-05-07677 CI

### AMENDED COMPLAINT

COME NOW plaintiffs Shawn Klemmer and Stephanie Klemmer, by and through their attorneys, Ashburn & Mason, and allege as follows:

I.       **JURISDICTION**

1.     Shawn Klemmer and Stephanie Klemmer ("Klemmers") are husband and wife.

2.     The Klemmers are residents of Anchorage, Alaska.

ASHBURN & MASON
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

3.      Upon information and belief, Providence Health System - Washington is a foreign corporation. It does business in the State of Alaska and owns, operates, and/or manages Providence Alaska Medical Center ("Providence").

4.      Upon information and belief, Medivance, Inc. ("Medivance") is a foreign corporation with its principal place of business located in Colorado. Medivance, at all times relevant to this complaint, conducted business in Alaska and has had sufficient minimum contacts to be subject to the jurisdiction of Alaska state courts.

5.      Upon information and belief, Kimberly-Clark Corporation ("Kimberly-Clark") is a foreign corporation, licensed to do business in Alaska and at all times relevant to this complaint has conducted business in Alaska and has had sufficient minimum contacts to be subject to the jurisdiction of Alaska state courts.

## II.    GENERAL ALLEGATIONS

### A.    The Arctic Sun

6.      Upon information and belief, Providence acquired an Arctic Sun Temperature Management System, Model 100, ["Arctic Sun 100"] manufactured by Medivance in November 2002 to use during off-pump bypass surgeries and/or cardiac surgeries to control the body temperature of cardiac patients.

ASHBURN & MASON P.C.
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 2 of 13

7.    The Arctic Sun Temperature Management System is used to monitor and control patient temperature and consists of "heat transfer" or "energy transfer" pads which are adhered to the patient's skin and a control module that circulates temperature controlled water.   The control module is connected to the pads by flexible tubing.

8.    According to the Arctic Sun 100 product literature, a probe connected to the control module senses the patient's core temperature.

9.    According to the Arctic Sun 100 product literature, the "energy transfer pads" are coated with a hydrogel that is "50% water and serves as an excellent conductor of energy."

10.    According to the Arctic Sun 100 product literature, the energy transfer pads are adhered directly to the patient's skin and water is circulated through the pads to control the patient's body temperature.

11.    According to the Arctic Sun product literature, circulating water temperature ranges between room air temperature and 42° Celsius (107.6° Fahrenheit).

12.    According to the Arctic Sun product literature, the patient temperature control range is 33° C to 37° C (91.4° F to 98.6° F).

13.    According to the product literature, the Arctic Sun has a high temperature alarm/alert that goes off if the "patient temperature is greater than 38°

ASHBURN & MASON P.C.
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331  •  FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 3 of 13

Ex. C, p. 3 of 13

C/100.4° F and the water temperature is greater than the patient temperature and rising."

14.     There were/are no warnings in the product literature regarding the risk of injury to patients.

15.     There were/are no warnings in the product literature regarding the risk of a patient suffering second and third degree burns.

16.     There were/are no warnings in the product literature regarding contraindications for use of the Arctic Sun 100.

17.     Upon information and belief, Kimberly-Clark obtained all product rights related to the patient warming business from Medivance on or around May 27, 2003.

18.     Kimberly-Clark started marketing the Arctic Sun 100 as the Kimberly Clark Patient Warming System, Model 100 Control Unit.

19.     According to Kimberly-Clark product literature, the patient warming system, Model 100, "is powerful enough to maintain precise patient temperatures – programmed either manually or automatically – during lengthy and complex surgeries such as cardiopulmonary bypass."

20.     Kimberly-Clark provided Providence with an "upgrade" to the Arctic Sun 100 in September 2003 and assisted Providence employees with upgrading the Arctic Sun 100.

ASHBURN & MASON
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914  •  FAX 907.277.8235
TEL 907.276.4331

21.     Prior to Medivance selling/renting/supplying the Arctic Sun 100 to Providence, Medivance was aware of at least four other incidents where patients were burned when the Arctic Sun 100 was used during surgeries.

22.     Prior to Mr. Klemmer's November 13, 2003 surgery, Medivance and/or Kimberly-Clark were aware of at least six other incidents where patients were burned when the Arctic Sun 100 was used during surgeries.

23.     There have been at least three incidents since Mr. Klemmer's surgery where patients were burned when the Artic Sun Temperature Management System/Kimberly-Clark Patient Warming System was used.

**B. Providence's Policy Regarding Trial/New Equipment**

24.     When trial/new equipment is obtained by Providence there is a process in place to ensure that the equipment is safe to use.

25.     When trial/new equipment is obtained by Providence there is a policy to provide training or "inservices" to ensure that Providence staff has the required skill level necessary to operate the equipment safely.

26.     For trial/new equipment inservices are required to be done at Providence prior to the implementation of any new product with staff documentation to reflect required skill level and quality checks necessary for operations.

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 5 of 13

**Ex. C, p. 5 of 13**

27.    There was one unannounced inservice provided to the Providence nursing staff by a representative from Medivance or Kimberly-Clark of the Arctic Sun that lasted 5 – 10 minutes.

28.    At least one of the Providence operating room nurses who attended to Mr. Klemmer during his surgery, who assisted in placing the pads on Mr. Klemmer, and who monitored the Arctic Sun 100 during the surgery did not attend any inservice on the Arctic Sun 100, but was "trained" by other Providence staff.

29.    The Providence operating room nurse who did not attend an inservice was not given anything to read about the Arctic Sun 100.

30.    There is no documentation that any Providence staff member was trained in use of the Arctic Sun 100.

31.    The Biomedical Division of Providence inspects new equipment to make sure it functions properly.

32.    The Biomedical Division of Providence inspects new equipment to make sure it is safe to use.

33.    The Biomedical Division performs regular maintenance on medical equipment used at Providence.

34.    The Biomedical Division inspects medical equipment when alerted by medical personnel that the equipment is not functioning properly.

ASHBURN & MASON.
LAWYERS
1130 West Sixth Avenue, Suite 100
Anchorage, Alaska 99501-5914
Tel. 907.276.4331 · Fax 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

35.     The Biomedical Division may adjust/repair medical equipment that is not functioning properly.

36.     Providence undertook an "initial inspection" of the Arctic Sun 100 on or around September 11, 2003, almost one year after obtaining the equipment.

37.     Providence completed an "upgrade" of the Arctic Sun 100 that was provided by Kimberly-Clark on or around September 25, 2003 with the assistance of employees/agents of Kimberly-Clark.

### C. Mr. Klemmer's November 13, 2003 Surgery

38.     On or about November 13, 2003, Mr. Klemmer underwent a carotid endaterectomy, a mitral valve repair and bypass surgery at Providence.

39.     The Arctic Sun 100, acquired by Providence from Medivance and upgraded by Providence with a product provided by Kimberly-Clark and with assistance from Kimberly-Clark, was used to control Mr. Klemmer's body temperature during the surgery.

40.     Providence nursing staff and the anesthesiologist placed the Arctic Sun energy transfer pads on Mr. Klemmer's back in preparation for his surgery.

41.     Providence nursing staff and/or the anesthesiologist placed a temperature probe for the Arctic Sun 100 in one of Mr. Klemmer's nasal cavities.

ASHBURN & MASON PC
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 • FAX 907.277.8235

42.    The anesthesiologist monitored Mr. Klemmer's body temperature through a probe she placed in Mr. Klemmer's other nasal cavity.

43.    Providence nursing staff were responsible for monitoring the Arctic Sun 100 display panel during Mr. Klemmer's bypass surgery.

44.    Mr. Klemmer entered the operating room at 7:49 a.m. on or about November 13, 2003.

45.    The anesthesiologist turned on the Arctic Sun at 7:50 a.m.

46.    The anesthesiologist made a notation in the anesthesia record that the Arctic Sun was turned off at 12:51 p.m. and turned back on at 15:09 (3:09 p.m.).

47.    Anesthesia care ended for Mr. Klemmer at 19:22 (7:22 p.m.) on or about November 13, 2003.

48.    Temperature measurements taken through the anesthesiologist's probe were within the normal, expected range for this type of procedure.

49.    According to the anesthesia record, core temperature measurements taken through the anesthesiologist's probe never went above 36° degrees.

50.    The Arctic Sun 100 never alarmed during the surgery.

51.    After Mr. Klemmer's surgery, the anesthesiologist and Providence nursing staff removed the Arctic Sun 100 pads from Mr. Klemmer's back and

ASHBURN & MASON P.C.

LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

discovered a burn in the middle to right side of his back where the Artic Sun pads had been placed.

52. There was nothing else in contact with the part of Mr. Klemmer's back that was burned aside from the Arctic Sun 100 energy transfer pads.

53. Mr. Klemmer suffered second degree and full-thickness, third degree burns to his back which measured approximately 10 cm x 15 cm.

54. As a result of the burns on his back, Mr. Klemmer's discharge from the Providence was delayed.

55. As a result of the burns on his back Mr. Klemmer has required treatment by a plastic surgeon, as well as other healthcare providers.

56. As a result of the burns on his back, Mr. Klemmer has suffered nerve damage and/or nerve entrapment.

57. Since Mr. Klemmer suffered the second and third degree burns he has been in pain.

58. Because of the burns, Mr. Klemmer has suffered a severe and permanent impairment and/or severe disfigurement resulting in economic and non-economic losses.

ASHBURN & MASON₁₁ₖ
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

### III. CAUSE OF ACTION AGAINST MEDIVANCE/KIMBERLYCLARK/ PROVIDENCE FOR STRICT LIABILITY – DEFECTIVE PRODUCT

59. Plaintiff incorporates paragraphs 1 through 58 in this Count.

60. Medivance manufactured the Arctic Sun 100 Temperature Management System and sold/rented/supplied a unit to Providence in or around November 2002.

61. Kimberly-Clark sold/rented/supplied an "upgrade" of the Arctic Sun 100 to Providence in September 2003.

62. Kimberly-Clark assisted Providence employees/agents in "upgrading" the Arctic Sun on or around September 25, 2003.

63. The Arctic Sun 100 was defective when it left the possession of Medivance and/or the product upgrade sold/rented/supplied to Providence in September 2003 and accomplished by Providence employees/agents with the assistance of Kimberly-Clark caused the product to be defective.

64. The defect in the product and/or the product upgrade was the proximate cause of Mr. Klemmer's burn injuries.

65. The Arctic Sun 100 failed to perform as safely as an ordinary consumer would expect in that it caused second and third degree burns to a patient, Mr. Klemmer.

66. The Arctic Sun 100 was used in an intended and reasonably foreseeable manner when it was used for Mr. Klemmer's bypass surgery.

ASHBURN & MASON.

LAWYERS

1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 10 of 13

**Ex. C, p. 10 of 13**

## IV.    CAUSE OF ACTION AGAINST MEDIVANCE/KIMBERLY-CLARK FOR STRICT LIABILITY – FAILURE TO WARN

67.    Plaintiff incorporates paragraphs 1 through 66 in this Count.

68.    The Arctic Sun 100 as marketed posed a risk of injury to Mr. Klemmer.

69.    Neither Medivance nor Kimberly-Clark gave adequate warning of the fact that a patient could be burned by the product or that a patient was at risk for suffering second and third degree burns from use of the product.

70.    The failure of Medivance and/or Kimberly-Clark to provide adequate warnings proximately caused Mr. Klemmer's burn and burn related injuries.

## V.    CAUSE OF ACTION AGAINST MEDIVANCE/KIMBERLY-CLARK – NEGLIGENCE

71.    Plaintiff incorporates paragraphs 1 through 70 in this Count.

72.    Medivance/Kimberly-Clark owed a duty of care to the plaintiffs.

73.    Medivance/Kimberly-Clark were negligent in designing or manufacturing the Arctic Sun 100 in a manner that would allow the water circulating in the energy transfer pads to reach such a temperature as to cause second and third degree burns without the system alarming or alerting medical personnel.

74.    Medivance/Kimberly-Clark breached their duty of care to the plaintiffs when it sold/rented/supplied to Providence and/or upgraded the Arctic Sun 100

ASHBURN & MASON
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL. 907.276.4331 · FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 11 of 13

Ex. C, p. 11 of 13

knowing it would be used for cardiac surgeries without adequately warning Providence of the danger it posed to patients such as Mr. Klemmer.

## VI. CAUSE OF ACTION AGAINST PROVIDENCE -- NEGLIGENCE

75.    Plaintiff incorporates paragraphs 1 through 74 in this Count.

76.    Providence failed to train its staff on the use and monitoring of the Arctic Sun 100.

77.    Employees/agents of Providence lacked the skill, expertise, and/or training to properly operate, use and/or monitor the Arctic Sun 100 that was used to control Mr. Klemmer's body temperature during his November 13, 2003 bypass surgery.

78.    Employees/agents of Providence were negligent in the manner in which they modified/upgraded the Arctic Sun 100 prior to Mr. Klemmer's surgery.

79.    The negligence of Providence was a direct and proximate cause of Mr. Klemmer's injuries including, but not limited to, severe and permanent impairment and/or severe disfigurement resulting in economic and non-economic losses.

WHEREFORE, plaintiffs pray for relief as follows:

1.    Compensation for past and future pecuniary losses, including lost income and/or earning capacity, and future medical expenses;

ASHBURN & MASON LLC
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 • FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

2.    Compensation for pain and suffering, loss of enjoyment of life and other non-economic damages in excess of $100,000, the exact amount to be proven at trial;

3.    Compensation to Stephanie Klemmer for loss of consortium and other non-economic damages the exact amount to be proven at trial; and

4.    Costs of litigation, attorney fees, pre-and post-judgment interest, and such other relief as is warranted under the circumstances.

ASHBURN & MASON, P.C.
Attorneys for Plaintiffs

DATED: _11-10-05_

By: _____
Donna J. McCready
Alaska Bar No. 9101003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was ☐ faxed ☑ hand delivered ☐ mailed on this _14_ day of November, 2005 to:

James D. Gilmore
Gilmore & Doherty
1029 W. Third Ave., Suite 500
Anchorage, AK 99501

Matthew Peterson
Clapp Peterson, LLC
711 H Street, Suite 620
Anchorage, AK 99501

ASHBURN & MASON, P.C.

By: _____
Jennifer A. Lynn

P:\Clients\10198\Pleadings\amended complaint.doc

ASHBURN & MASON, P.C.
LAWYERS
1130 WEST SIXTH AVENUE, SUITE 100
ANCHORAGE, ALASKA 99501-5914
TEL 907.276.4331 · FAX 907.277.8235

AMENDED COMPLAINT
*Klemmer v. Providence, et al.*
Case No. 3AN-05-07677 CI

Page 13 of 13

**Ex. C, p. 13 of 13**